[No. C065210. Third Dist. May 9, 2014.]

In re the Marriage of LESLIE and TERRY MOORE.
LESLIE MOORE, Appellant, v.
TERRY MOORE, Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I, IIC, IIE, III, IV, V and VI.

**COUNSEL**

Leslie Moore, in pro. per.; Law Office of Elizabeth N. Niemi and Elizabeth N. Niemi for Appellant.

Kimberly Merrifield for Respondent.

**OPINION**

**NICHOLSON, Acting P. J.**—This appeal arises from judgments in a marriage dissolution action regarding the division of retirement and employment benefits, the division of other assets, the award of temporary and permanent spousal support, and the denial of requests for attorney fees and costs. We affirm in part and reverse in part.

## FACTS

Appellant Leslie Moore and respondent Terry Moore were married for over 27 years. They married on October 17, 1980. Leslie is a homemaker. Terry is

an officer with the Chico Police Department, and has been since 1984. Leslie filed a petition for dissolution on March 18, 2008.

The case proceeded with difficulty. All of the Butte County Superior Court judges eventually recused themselves for cause. In August 2009, the presiding judge reassigned the case to a visiting judge, the Hon. William P. Lamb, for trial.

Leslie was represented by three different attorneys. The latter two received permission from the court to withdraw as counsel. Leslie proceeded to represent herself at trial. She filed her appellant's opening brief in propria persona, but she retained an attorney to file her reply brief.

The court awarded temporary spousal support. As discussed further below, Leslie later requested the court to modify the award, but the court never entertained the requests.

The court entered judgment terminating the marriage on September 1, 2009, effective August 19, 2009. Trial continued on the issues of support, division of Terry's retirement and employment benefits, property division, and attorney fees. The court entered its judgment on those matters on June 3, 2010. It ordered Terry to pay spousal support of $900 per month. It awarded the couple's home to Leslie by stipulation of the parties, a value of $230,000. It also awarded Leslie one-half of the community interest in Terry's retirement (PERS), deferred compensation, and other deposits. It reserved jurisdiction on two of Terry's employment benefits: a retiree medical reimbursement account and his accrued sick leave. It did not rule on a motion by Leslie for sanctions due to Terry's failure to disclose the reimbursement account and other employment benefits. It also concluded Terry's accrued vacation had no value.

The court ordered Leslie to make an equalization payment of $153,648. That payment included reimbursement for Terry's separate property contributions to the community and the value of Leslie's exclusive occupation of the couple's home from separation to judgment. Finally, the court ordered the parties to bear their own attorney fees and costs.

Leslie appeals, challenging numerous trial court rulings. She contends the court erred by (1) refusing to hear her motion to modify temporary spousal support retroactively; (2) incorrectly dividing, or reserving jurisdiction on, Terry's retirement benefits, employment benefits, and deferred compensation, and not ruling on her motion for sanctions for failure to disclose; (3) incorrectly dividing and valuing other community assets, including Leslie's use of the home after separation and Terry's separate property contribution;

(4) awarding too little in permanent spousal support; and (5) not awarding her attorney fees and costs. She also contends (6) the entire trial proceeding was tainted with bias.

We will address each contention, and we will provide additional facts as required.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

#### *Division of Employment Benefits and Retirement*

Leslie contends the trial court erred in dividing certain of Terry's employment benefits and retirement. She challenges the court's ruling on Terry's retiree medical reimbursement account, his accrued vacation, the commencement of her share of Terry's PERS, his accrued sick leave, and his deferred compensation. She also claims the court erred by not imposing sanctions against Terry for his failure to disclose the medical reimbursement account and other employment benefits. We conclude the court erred in its analysis of Terry's accrued vacation. We also conclude the court erred when it declined to consider sanctions against Terry for failing to disclose the medical reimbursement account. We affirm the court's ruling on the other employee benefit and retirement issues.

#### A.   *Medical reimbursement account*

One of the fringe benefits of Terry's employment is participation in a retiree medical reimbursement plan known as the retiree medical expense and health insurance trust (medical trust). The trial court reserved jurisdiction to award any interest in the medical trust, as it found the medical trust's current value was unknown and speculative. The court ordered its value, if any, to be determined upon Terry's retirement.

Leslie claims the trial court erred in reserving jurisdiction on the medical trust. She contends the medical trust is a community asset that could have been divided at trial based on an actuarial valuation of present value, and the trial court erred when it did not order the valuation to be performed at Terry's

---

*See footnote, *ante*, page 92.

expense. She also claims Terry should be subject to sanctions, as he did not disclose this asset in his required disclosures. We conclude the medical trust is a community asset, but the court did not abuse its discretion in reserving jurisdiction on this issue. However, we conclude the court must consider Leslie's request for sanctions.

### 1. *Additional background information*

In its memorandum of understanding (MOU) with the Chico Police Officers' Association (CPOA), the City of Chico (the City) acceded to the CPOA establishing the medical trust. The medical trust "is to provide funding for medical expenses and health insurance . . . for eligible retirees, or qualified family members of eligible retirees as established by the Trust." The City agreed to fund the trust with monthly contributions per police employee on active duty. The medical trust is administered and managed by the CPOA. As president of the CPOA, Terry designed the entire trust.

The medical trust is a unique asset designed to pay retirees a monthly benefit up to a certain maximum for covered medical expenses and health insurance premiums. To an extent, the medical trust is a defined contribution plan. The City pays a set amount each month into the trust for each public safety employee. That amount was $200 per month until January 1, 2009, when it was raised to $250 per month, and until January 1, 2010, when it was raised to $300 per month. The City began contributing to Terry's account in 2004, and as of April 2009, Terry had earned $7,324.24 in the medical trust.

However, the employee's right to the funds does not mature until retirement, and even then he may not access the entire amount. The retiree must submit a claim for reimbursement. The medical trust will reimburse a valid claim up to a monthly maximum amount. The retiree's maximum monthly benefit is set by the medical trust's trustees, and is calculated for each retiree based on the number of years of full-time employment since January 1, 2001, and the number of years the City made contributions for that retiree. If the retiree claims no expenses in a month, he receives no monthly benefit. Leslie argued this was not likely to happen, as the trust was set up to pay medical insurance premiums. Terry acknowledged it would pay those premiums.

As of the date of separation, Terry had not vested in the medical trust, as under the trust's terms at that time, the City had not contributed long enough to Terry's account to allow him to vest. Since then, however, Terry has vested. Because Terry has worked a sufficient number of years and received a prescribed minimum number of contributions from the City, the monthly benefit will be available to him from when he retires until his death. Any surviving spouse and dependents will have limited benefits after that time. As

of the time of trial, the medical trust had yet to make any payments or determine a monthly benefit amount as no beneficiary's rights, including Terry's, had matured.

Terry did not disclose the medical trust in any of his required declarations of disclosure. Leslie filed a motion for sanctions for Terry's failure to disclose "the two largest assets in the estate." She referenced her earlier declarations, in which she declared Terry had failed to disclose two of the largest assets, one of which was the medical trust. The other "asset" appears to have been Terry's other employment benefits and, in particular, his accrued vacation and sick leave. The trial court never addressed the motion.

### 2. *Analysis*

The medical trust is a community asset. Similar to a nonvested pension and other contingent retirement benefits, the medical trust's benefits are property rights because they represent a form of deferred compensation for services rendered. In this case, they are a contractual right derived from Terry's employment agreement with the City and earned by him while married to Leslie. They are thus a divisible community property asset.

■ "Generally, all property acquired by a spouse during marriage before separation is community property. (See Fam. Code, §§ 760, 771.) [¶] Under the leading case of *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561], and its progeny, such property may include the right to retirement benefits accrued by the employee spouse as deferred compensation for services rendered. (*Id.* at pp. 841–842.) This is the case whether or not the right to retirement benefits is 'vested' in the sense of 'surviv[ing] . . . discharge or voluntary termination,' and whether or not it is 'matured' in the sense of amounting to an 'unconditional' entitlement 'to immediate payment.' (*Id.* at p. 842.) What is determinative is not any 'abstract terminology' of this sort (*id.* at p. 851), but rather a single concrete fact—time. The right to retirement benefits 'represent[s] a property interest; to the extent that such [a] right[] derive[s] from employment' during marriage before separation, it 'comprise[s] a community asset . . . .' (*Id.* at p. 842.)" (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 177 [74 Cal.Rptr.2d 825, 955 P.2d 451] (*Lehman*).)

The community has an interest in the medical trust to the extent the monthly payments were made on Terry's behalf while he was married to Leslie. In this case, that would be all payments made into the trust by the City from the trust's conception until Terry and Leslie separated on March 1, 2008.

■ However, the trial court did not abuse its discretion by reserving jurisdiction to divide and value the community property interest at a later

date. "Upon dissolution of a marriage, the trial court has broad discretion in the division of the community property interest in a spouse's pension rights and can exercise its discretion in either of two ways. The trial court may either determine the present value of community property rights and award them to one spouse with offsetting community or other assets to the other (commonly called the cash out method), or it may divide the community interest in kind between the spouses, reserving jurisdiction to supervise future payments to each spouse. (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 848.)" (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 749 [214 Cal.Rptr. 661] (*Bergman*).)

"Because it is not possible to develop comprehensive guidelines for trial courts to follow in deciding whether to cash out or divide in kind community interests in pensions [or other deferred compensation], and because this decision is reached primarily by the weighing of equitable and factual considerations, appellate courts should not second guess the exercise of the broad discretion of trial courts in the absence of a clear showing of an abuse of that discretion. [Citations.]" (*Bergman, supra*, 168 Cal.App.3d at p. 751.)

There is no clear showing the trial court abused its discretion in reserving jurisdiction. The community's interest in the medical trust is difficult to value as of the date of separation and even as of today. At separation, Terry was not vested in the benefit. By trial, Terry had vested, but contingencies exist that could greatly affect the benefit's value. The benefit does not mature until Terry retires, and the amount of the benefit depends on the number of years Terry works for the City and the number of years the City contributes to the trust. Even after the benefit matures, the benefit is contingent on Terry filing claims for reimbursement of his covered medical expenses or insurance premiums. Because Terry is still working and cannot be forced to retire, because he continues to earn this benefit since the parties separated, and because the benefit when matured is still contingent, the community estate's interest cannot easily be valued at the present time.

In addition, relying on a present actuarial value could result in a substantially unequal division. Terry could die before the benefit matures, or he could retire before his right matures at the highest benefit level available. In either of those circumstances, Leslie would have received an unequal share of the asset if it was paid out now on its present cash value. Moreover, neither party submitted actuarial evidence of present value, and the trial court was not obligated to order Terry to fund that cost. Because of these uncertainties, the court did not abuse its discretion by reserving jurisdiction on the division and valuation of the medical trust.

■ Leslie claims the court erred by reserving jurisdiction indefinitely. (See *Bergman, supra*, 168 Cal.App.3d at p. 755.) But Family Code section

2550 "expressly empowers the trial court to reserve jurisdiction to make a property division at a later time." (*In re Marriage of Kilbourne* (1991) 232 Cal.App.3d 1518, 1525 [284 Cal.Rptr. 201] [regarding predecessor statute].) Moreover, under the circumstances of this case, the court's reservation of jurisdiction was not truly indefinite. Retirement was not too far distant. Terry was eligible to begin earning retirement under PERS at age 50. At the time of trial, Terry was 57 years old, had been employed with the City since 1984, and he planned to work at least a total of 30 years, or until 2014.

In any event, this asset seems the type of asset best left to the trial court's reserved jurisdiction. By reserving jurisdiction in order to perform an in-kind division upon Terry's retirement, the trial court equally divided the risk that the benefit will fail to mature, and it deferred the asset's valuation until the major contingency, Terry's retirement, is resolved. Whether to divide a contingent community asset by cash-out valuation or by in-kind partition upon reserved jurisdiction lies within the trial court's sound discretion (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 848), and the court did not abuse that discretion by reserving jurisdiction on the medical trust.

We do, however, conclude the court erred when it failed to consider Leslie's request for sanctions against Terry for his failure to disclose the medical trust in either of his preliminary or final declarations of disclosure. After Terry conceded he had not disclosed the medical trust, and Leslie protested the lack of disclosure, the trial court stated Terry was not obligated to disclose it if it was his position the asset had no value. This was incorrect.

A party's preliminary declaration of disclosure must identify all assets in which the declarant may have an interest, regardless of the characterization of the asset as community or separate property. (Fam. Code, § 2104, subd. (c)(1).) For purposes of this requirement, the term " '[a]sset' " includes "any real or personal property of any nature, whether tangible or intangible, and whether currently existing or contingent." (Fam. Code, § 2101, subd. (a).) This is so whatever the declarant's opinion of value. The medical trust qualified as an asset Terry was required to disclose.

If a party fails to comply with the disclosure requirements, the trial court "shall . . . impose money sanctions against the noncomplying party. Sanctions shall be in an amount sufficient to deter repetition of the conduct or comparable conduct, and shall include reasonable attorney's fees, costs incurred, or both, unless the court finds that the noncomplying party acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (Fam. Code, § 2107, subd. (c).)

On remand, the trial court is directed to hear and rule on Leslie's motion for sanctions for Terry's failure to disclose the medical trust.[2]

## B. *Vacation pay*

The trial court ruled Terry's accrued vacation pay was not a community property asset because it could not be valued and divided. Terry had accrued vacation time of 480 hours, the maximum he could earn. If cashed in, it would be worth some $17,000, but it can be cashed in only at the time of retirement. The court also noted that by the time Terry retires, all of. the maximum 480 hours will have accrued after separation and become his separate property. The court thus ruled the asset had no present value.

Leslie contends the trial court erred in not dividing the vacation pay. She claims vacation pay is a form of community property wages that should be divided as part of a dissolution proceeding. We review the trial court's determination as to characterization independently (*Lehman, supra*, 18 Cal.4th at p. 184), and we agree with Leslie's claim.

■ "It is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. [Citations.]" (*Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 779 [183 Cal.Rptr. 846, 647 P.2d 122].) "The right to a paid vacation, when offered in an employer's policy or contract of employment, constitutes deferred wages for services rendered." (*Id.* at p. 784.) Once vested, paid vacation time cannot be forfeited. (Lab. Code, § 227.3.)

"Consequently, like any form of deferred compensation, accrued vacation benefits are a property interest which, to the extent earned during marriage and before separation, are divisible community property at marriage dissolution. [Citation.]" (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2013) ¶ 8:96, p. 8-27 (rev. # 1, 2009).)

■ Terry originally contended that accrued vacation is not a community asset under the rule of *In re Marriage of Lorenz* (1983) 146 Cal.App.3d 464, 467–468 [194 Cal.Rptr. 237] (*Lorenz*). In that case, the Second Appellate District held accrued vacation pay was not a community asset because it could not be exchanged for cash upon the date of separation. However, the court did not discuss Labor Code section 227.3, which provides an employee must be paid for vested vacation time upon termination of employment. As a

---

[2] The trial court is not required to consider sanctions for nondisclosure of any other employment benefits, as Terry disclosed them. He disclosed his PERS and deferred compensation benefits in the form declaration, and he disclosed his accrued vacation and sick leave by attaching his pay statement.

result, the *Lorenz* court did not consider whether vacation pay could be valued currently based on the fact the employee spouse could receive cash for it on termination. Thus, *Lorenz* does not apply here.

■ Because the evidence showed that Terry was eligible to retire at the time of trial but had chosen not to, and because Terry can cash in his accrued vacation pay when he retires, the only thing preventing Terry's accrued vacation pay from having immediate cash value to him at the time of trial was his decision to continue working. These facts bring the case within the rationale of the Supreme Court's decision in *In re Marriage of Gillmore* (1981) 29 Cal.3d 418 [174 Cal.Rptr. 493, 629 P.2d 1] (*Gillmore*). In *Gillmore*, the husband was eligible to retire but wanted to keep working. The wife sought an order requiring him to pay her share of the retirement benefits he could be drawing, but the trial court refused. The Supreme Court reversed, stating as follows: "Under the cases and statutory law, [the husband] cannot time his retirement to deprive [the wife] of an equal share of the community's interest in his pension. It is a 'settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse.' [Citations.]" (*Id.* at pp. 422, 423.)

The *Gillmore* court explained, "Compensation is possible here because the value of [the wife's] interest is known to the court. Also, the only condition to the payment of the benefits, [the husband's] retirement, is entirely within his control. . . . [¶] [The husband's] claim that he is being forced to retire misses the point. He is free to continue working. However, if he does so, he must reimburse [the wife] for the share of the community property that she loses as a result of that decision. His claim that the court lacks jurisdiction to order him to make payments to [the wife] because it lacks jurisdiction over his separate property also lacks merit. [The husband] alone will make the decision to use separate property to reimburse [the wife], when and if he decides not to retire. His situation is not unlike that faced by a couple ordered to divide a house that they own as community property. If one of the spouses chooses to keep the house, he or she is free to use separate property to purchase the other's interest. Here, [the husband] must divide his retirement benefits with [the wife]. If he does not wish to retire, he must pay her an amount equivalent to her interest." (*Gillmore, supra,* 29 Cal.3d at pp. 426–427, fn. omitted.)

Here, the only thing preventing Leslie from receiving her share of the community's interest in Terry's accrued vacation pay is Terry's decision to keep working, yet under *Gillmore*, Terry cannot defeat Leslie's community interest in his accrued vacation pay by invoking a condition wholly within his control. Moreover, as in *Gillmore*, compensation is possible here because the value of Leslie's interest in the accrued vacation pay was established by the

evidence: $18,897.60, which equals 480 hours of accrued vacation multiplied by Terry's pay rate at the time of trial ($39.37 per hour), divided in half.

The trial court thus erred in not finding the accrued vacation pay was a community asset and not dividing it based on its cash value at the time of trial. (Fam. Code, § 2552, subd. (a).) Indeed, at oral argument, Terry conceded accrued vacation pay was a community asset that must be divided upon dissolution. We remand the case for the trial court to award Leslie one-half of $18,897.60, or $9,448.80, in the form of a reduction in the amount of her equalization payment.

## C. PERS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## D. Accrued sick leave

Leslie contends the court erred when it refused to divide and value Terry's accrued sick leave because, upon retirement, Terry can credit his accrued sick leave to PERS for additional service credit. The community would have an interest in that leave to the extent it affects his retirement, and Leslie fears Terry may take steps that would reduce or eliminate his ability to receive full credit from PERS at the expense of the community. The trial court reserved jurisdiction to address the accrued sick leave, and we conclude the court did not abuse its discretion in doing so.

### 1. Additional background information

Terry accrues sick leave at the rate of eight hours per month without any cap. As of the time of separation, Terry had accrued 1,871.67 hours of sick leave. Under the MOU and upon retirement, Terry's accumulated sick leave is to be credited to Terry's PERS retirement account for additional service credit except to the extent Terry desires to convert any of his sick leave to cash. However, PERS allows Terry to earn no more than 30 years of service credit. Thus, if he works 30 years, his accrued sick leave will not add any value to his PERS retirement. If, on the other hand, he retires after 29 years of employment and applies his accrued sick leave to PERS service credit, he could receive nearly another year in retirement credit, essentially the value of a year of salary for purposes of retirement.

In the event Terry chooses to convert his sick leave to cash, he will not be reimbursed dollar for dollar. Under the MOU, he is limited to converting up

---

*See footnote, *ante*, page 92.

to 50 percent of his sick leave for a maximum amount of $3,000. Terry testified $3,000 was the maximum the City would pay for his sick leave. In addition, if Terry becomes seriously ill before retiring, he could theoretically use all of his sick leave, leaving him with no accrued sick leave upon retirement to convert to cash or service credit.

Leslie sought to have Terry's sick leave valued at the disposition as a part of Terry's retirement. She feared if this were not done, Terry would credit his sick leave to PERS, receive another year of service credit and a higher retirement allowance, and she would lose out on that benefit because she started receiving her portion of his PERS benefits before he retires.

The trial court acknowledged that if Terry credited sick leave to PERS upon his retirement, any increase in his retirement would have a community property interest. Terry's counsel agreed, but he asked the court to retain jurisdiction over the issue to make any necessary adjustment to Leslie upon Terry's retirement. In its judgment, the trial court retained jurisdiction over Terry's accrued sick leave, concluding its value could not be determined until Terry retired.

On appeal, Leslie challenges the court's ruling in two respects: its effect on her interest in Terry's sick leave as of the time of separation and her interest as of the time of Terry's future retirement. On the first point, she asserts the trial court did not err in reserving jurisdiction, but she is concerned Terry could transmute any community property interest in the sick leave into his separate property before retiring. On the second point, she claims the court erred by not dividing and valuing the sick leave that could be credited to PERS. She fears that if the community interest is not apportioned now, the community may lose its interest in the leave should Terry work beyond 30 years.

### 2. *Analysis*

██  Unlike other forms of deferred compensation, such as retirement or vacation pay, sick leave is compensation "in lieu of wages" when an employee absents himself from work due to illness. (*Doyle v. Doyle* (1919) 44 Cal.App. 259, 262 [186 P. 188] (*Doyle*); see Lab. Code, § 233, subd. (b)(4).) Sick leave benefits paid while the employee is married are community property. (*Doyle, supra*, 44 Cal.App. at p. 262.) In this regard, accrued sick leave resembles disability insurance benefits. Disability benefits are "to compensate the disabled spouse for lost earnings—earnings which would normally be separate property after dissolution." (*In re Marriage of Saslow* (1985) 40 Cal.3d 848, 860 [221 Cal.Rptr. 546, 710 P.2d 346] (*Saslow*).) Disability benefits are treated as community property when paid during the

marriage, but they are treated as separate property when paid after dissolution and before retirement, even though they were earned or paid for during marriage. (See *In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 152 [137 Cal.Rptr.3d 611] [no community interest in CalSTRS (California State Teachers' Retirement System) disability allowance paid after dissolution but before disabled spouse's retirement].)

However, the community has an interest in any unused disability benefits at the time of retirement. That is because at that point, the payments are no longer in lieu of wages but are paid for purposes of retirement. (*Saslow, supra,* 40 Cal.3d at pp. 858–859.)

Accrued sick leave is to be treated in the same manner. Sick leave is community property when paid during the marriage, but when paid after separation but before retirement, it is separate property paid in lieu of wages. And just as the community has an interest in disability payments at the time of retirement, so too does it have an interest in accrued sick leave at the time of retirement. That is because at that point, the payments are no longer in lieu of wages but are paid for purposes of retirement.

■ Were disability benefits and, in turn, sick leave benefits, treated as community property when accrued during marriage but paid after separation, the law could inequitably divide the property to the disabled spouse's detriment. "If postdissolution disability benefits are held to be community property, a young ablebodied ex-spouse will be able to work and retain all his or her earnings, and will in addition be entitled to half the disability benefits of the disabled ex-spouse. This might impose a grave hardship on the disabled individual, who not only may not be able to work, but who may also require special equipment or extraordinary care." (*Saslow, supra,* 40 Cal.3d at p. 860.) For the same reasons, we hold that any interest in accrued and unused sick leave at the time of separation and prior to retirement is not community property.

Thus, the trial court's reservation of jurisdiction is to determine any community interest in Terry's accrued sick leave at the time of his retirement. Here, upon retirement, Terry may use his sick leave to purchase service credit with PERS or he may sell it for up to $3,000. In either event, the trial court, by reserving jurisdiction on this issue, will be able to apportion and divide the community interest, whether it is an increase in Leslie's retirement allowance or a share of the cash proceeds.

■ Leslie contends the trial court should divide the accrued sick leave into his retirement now; otherwise, Terry may work 30 years and not be able to use the sick leave to acquire additional PERS service credit. She claims by

not dividing this interest now, we allow Terry to transmute community property into separate property. This is incorrect. As we explained, the community has no interest in accrued sick leave except when benefits are paid during the marriage or upon retirement to the extent earned during the marriage. The court could reasonably conclude there are too many contingencies in play for it to determine now what the community value of Terry's accrued sick leave will be at his retirement. The value could possibly be zero if Terry becomes seriously ill before retiring and is forced to use all of his accrued leave. In that circumstance, the community will bear the loss equally, as the sick leave benefits used would have been Terry's separate property. Given this possibility, the court was well within its discretion when it retained jurisdiction over Terry's accrued sick leave.

E. *Deferred compensation**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed and the matter remanded to the trial court to hear and rule on Leslie's motion to modify temporary spousal support retroactively, to divide and award to Leslie the community property interest in Terry's accrued vacation, and to hear and rule on Leslie's motion for sanctions for Terry's failure to disclose the medical trust. In all other respects, the judgment is affirmed. Costs on appeal shall be borne separately by the parties. (Cal. Rules of Court, rule 8.278(a)(3).)

Robie, J., and Murray, J., concurred.

---

*See footnote, *ante*, page 92.